Honorable Appellate Court of the 2nd District is now open for submit to adjournment. The Honorable Susan Faye Hutchinson presiding. Please be seated. We will honor the first case of the morning, call 210-1025, State of Illinois v. John F. Johnson. On behalf of the Appellant, Ms. Joseph Skelnick. On behalf of the Appellee, Ms. Mary Baxter. All right, Ms. Skelnick, whenever you're ready. Good morning, Your Honors. Good morning. Good morning, Counsel. May it please the Court, I am here this morning on behalf of John Johnson. Mr. Johnson was convicted after a jury trial at which he represented himself of two counts of solicitation of murder and two counts of solicitation of murder for hire. Did he represent himself throughout the full proceedings, or was it kind of a on-again, off-again? It was a little hard to tell. He did initially have private counsel. I believe with this case, he ran out of money and had the public defender appointed. Public defender withdrew when he asked to represent himself, but did act as standby counsel. But Mr. Johnson did litigate most of the motions himself and handled the trial himself. Thank you. We are asking in this appeal that the defendant be given a new trial at which tapes, which the State obtained through eavesdrop orders, be suppressed, and at which any statements he made after the judge found he had invoked his right to counsel also not be admitted at trial unless the State shows that those statements are actually inconsistent with his trial testimony. Now, is there any, there were two applications for overhears. Correct. Is there any challenge to the second application? Here. I think there was at the trial court, but is there here? I would say there is in that what we are saying is that with respect to the first application, that that application did not establish reasonable cause for the issuance of it. And Mr. Johnson himself said at one of the hearings that there wasn't any new information in the second application, and the State did not dispute that at the trial level. So what we're asking is if the first application was insufficient, which we're contending it was, that anything that follows from that should be suppressed as a free, not necessarily an attack on the second application itself, but that it was the fruit of the first unlawful order. And if I can go to that issue, the initial eavesdrop order authorized an overhear of conversations between jailhouse informant Curtis Washington and the defendant, and then the second order authorized overhear of conversations between the defendant and Detective Osorio, who was posing as a hit man by the name of Rah-Rah. And our position is that the first application did not establish a reasonable cause for its issuance. I did in the reply brief include a copy of the application. I apologize that I did not include a copy of the order, but the order for that first application is in the record as People's Exhibit Number 23, and that order reflects that the only thing the judge considered, the issuing judge considered, was the application itself. So there was no subsequent hearing as contemplated by the statute that would allow additional evidence to be presented? Correct. In the case of an eavesdrop order, unlike a probable cause affidavit for a search warrant, for example, the seeking party could have brought in additional evidence at the hearing, but the order reflects, and in fact the judge who ruled on the motion to suppress the recordings, reflects that the only thing that was considered was the application. And so the case then, the validity of it, stands or falls on the information in the application? Correct. Was there any corroboration in that application? What about the issue of the informant knew that he was in there in a violation of moral protection, and he got the address of the ex-wife correct? Yes. In fact, that's the only two things that were corroborated. Obviously it's insufficient in your opinion. It is, because I don't think it's a fair inference that any individual who's incarcerated on a charge of a violation of an order of protection is likely seeking to have his ex-wife killed. I just don't think that's a reasonable inference from. Now, I think what they could have done, well, first of all, Curtis Washington, primarily the information here is based on information from Curtis Washington, who I think it's fair to say was a person of highly dubious credibility. He claimed that within a day of meeting John Johnson, Mr. Johnson was asking him to have his wife killed. He's basically, in fact, I think his pre-bond report was attached to the application if you look through that. He's basically a career thief. And at the time he made these statements to the officers, he was in jail because he was awaiting sentencing on one of his own cases and had another pending case, so he certainly had a motivation to try and work out some kind of deal. So he's a career thief, but is he, I mean, I suppose this is speculation, but does that make him a career liar? Well, it certainly would if you think about what's used to impeach individuals at trial. Thefts certainly are at the top of the list in terms of affecting someone's veracity. It's a moral turpitude, I understand that. Correct. But isn't there evidence in the record or some facts in the record that they had both been in custody at DuPage County for some time but they just got into the same pod or something at that time? I believe the application shows that Curtis Washington got into the sentencing pod, as he called it, the sentencing pod on June 24th, and the application reflects that his first discussion with the defendant was the next day and that at that time, according to Curtis Washington, the defendant asked him if he could find someone to kill his wife. But they were still the conversations first, correct? Like, we're both from the same neighborhood, this type of thing? Right, that was apparently the suggestion why he would trust this individual. Mr. Washington offered to find somebody to kill the defendant's wife, did he not? And so having made that offer, he then subjected himself to potential prosecution. One, I don't know that the application reflects that he told him he would, but two, I believe his testimony even at the trial was that he kept, according to him, he kept trying to talk the defendant out of it and it was, according to his testimony, the defendant was pushing him. But I don't believe the application suggests that Curtis Washington actually told him that he would help him do this. The first thing Curtis Washington did after this conversation was to send a memo to one of the jailers and saying, please call me out of the cell, and basically tried to get some kind of consideration for his own cases. If I may add just a second, Ms. Kellman. If we were to find that the trial court error denying the motion to suppress the overheard statement between Washington and the defendant, would that error be subject to a harmless error analysis? Well, one, I would say if the first application, the first order was improperly issued, our position would be it affects both the first and the second eavesdrop order, and certainly those combined were the bulk of the state's case. Secondly, the state has not argued any kind of harmless error in this case. So to that extent, if there's any kind of argument like that, I would say that it was forfeited on behalf of the state. But I believe these two overhear orders provided the bulk of the state's evidence in this case. One thing they could have done is, again, they could have provided further corroboration so that there would be a substantial basis for crediting Curtis Washington's hearsay. They could have, in fact, brought Curtis Washington before the issuing judge, and the judge would have had an opportunity to question him and ask further questions and use that information in determining whether he was a reliable informant. But perhaps even more basically, I wonder, as I read it, why didn't they determine whether the defendant did post a $15,000 in bond? That would be readily accessible from a court file. Correct. Yes. And they could have talked to the defendant's ex-wife. They knew whose ex-wife was and knew her address. They could have. There's not even an indication in this application that they looked into the underlying facts of the violation of an order of protection. So we don't even know from this application what the nature of the violation was. You can violate an order of protection by being in the same area as a protected party or talking to a protected party. So that's another thing, that they could have provided more corroboration simply by giving more information about the nature of the charges against him. We have some cases that were cited and discussed, I think, by both counsel that talk about applications that were found sufficient. Maybe Wassel, something called Odell, and maybe Wassel was the other side. Wassel was the one that found it insufficient. There was one, and I'm sorry, I don't recall the exact name of it, but there was one from this district. I think it was from Hammer it might have been, people v. Hammer, which was essentially, it was, I believe, an arson. And it was based on affidavits from people who did not appear before the judge, but there were three of them, and they corroborated each other. And one of them was basically an ordinary citizen. So I guess my question was, having several cases cited, and I apologize for the Wassel reference, that was the wrong direction. Is there anything in any of these cases that say, at a minimum, this must happen? Or are they just recounting basic facts that had occurred that a trial court looked at and then ultimately an appellate court looked at? Yeah, the standard is to look at the totality of the circumstances, so I think that they just essentially look at the facts that were before them in that particular case and say, based on all the totality of the circumstances here, in some cases the officer shows up with the affiant and the affiant's questioned by the issuing judge, or there's several affidavits, and actually this is not even an affidavit from Curtis Washington, it's just statements by the officer, but there's several affidavits that corroborate each other. And let's be clear, the statements of the officer about what Washington told him, if substantially or significantly corroborated, would be sufficient? If corroborated, right. In your mind. So it doesn't have to be the person who's doing the work, it can be the officer who's relating what happened. Right. This officer, again, could have, for example, gone out and checked the files in DuPage and found the defendant did have $15,000 posted and there was a hearing set on such and such a date or the bond money was going to be given back to him in the following week. Do we know that the judge didn't have that information available to him? Well, what we know is that according to the order that was issued, the judge says, upon examination of the application, and that's all there is. Well, but the application says that there's a $15,000 bond. Right. And that part of it is for him, part of it, that part isn't available. But the $15,000 bond and the charge might be available on a jail log or something that the judge has access to? There's no indication that the judge considered it. And I actually don't know what information would be available at the time it was issued, but it certainly is not reflected in the record that there was anything but the application considered. And in fact, when the trial judge ruled on this, the only thing the trial judge considered in ruling on the sufficiency of it was the application itself. There was no argument made by the state that anything else had been presented to the issuing judge. So it seems pretty clear from this record that I'm trying to understand what was presented and what was available to the judge could be two different things. As a sitting judge, I remember I had access to information that you walking in off the street could get. But I had it right there. And today on a computer, all I'd have to do is touch a computer. But you're saying it doesn't show. Right. The application, the order itself shows the judge only examined the application at the arguments on this motion. The only discussion was what was in the application itself. The prosecutor did not present anything to indicate that there was any information other than the application. Does the judge have to say when he or she is making a ruling like this or in the order, I take a judicial notice in order for that to be recognized? Those magic words. I think it has to be reflected that the information was made available or considered by the judge. So even if if there were something like your honor, the state also or the officer also presented the violation of order protection file. That wasn't done here. It's something maybe a judge could do, but it wasn't done in this case. So it's record reflexive. The only thing that was done was the application was presented. And based on that application, the eavesdrop order was issued. What about the impeachment issues? Yeah. Constant statements that you were alluding to earlier. Correct. In that case, what what the state did. Mr. Johnson essentially admitted to every lie he had said to Detective Harris when Detective Harris pulled him out later in the I guess it was early July. And when Detective Harris had been talking to him and it's a little a little difficult to follow from the record because the second half of that videotape just hasn't been found. But the state did indicate on the record that three of the four statements they were using to impeach the defendant were statements that had been suppressed by the trial judge. And what the state did was not to show that whatever the defendant had said to Detective Harris was inconsistent with what he had testified to. What the state was showing was that when he spoke to Detective Harris, he lied about what he had said to the other two individuals. But he admitted that. So it was basically showing he had lied on his videotape or his recorded statements, but not that he had lied in court. So let me ask you this. Did the defense object to the admission of those statements for impeachment at trial? No. What about the argument that that issue has now been procedurally defaulted? Well, we have asked that it be considered as plain error because of the fact that the judge did find that his right to counsel was violated by these statements. So we're asking that it be considered under under that. So the only way if the record reflects the statement at trial rather than the state impeaching statements at trial rather than impeaching prior inconsistent statements. Basically, the state was showing that he lied on the recorded statements when he talked to Detective Harris, but not that he lied at trial. They were trying to present him as he's a liar. He's basically he's a liar. But they use statements that weren't inconsistent with his trial testimony to show that when we say his trial testimony, are we talking about his what? What amounted to just sort of a he didn't sit there and ask himself a question, his narrative. Right. Or do we include even the cross examination? Right. Including the cross examination. Yes. And I would just ask that we be given a new trial. You'll have an opportunity for rebuttal. Thank you. Ms. Burns, whenever you're ready. Good morning, Your Honors. May it please the court. My name is Mary Beth Burns, and I represent the people of the state of Illinois. We come before you this morning to respectfully ask this court to affirm the defendant's convictions for solicitation of murder for hire. My counsel, I'll start with the matter of the eavesdrop authorization. And I think one thing that has to be considered in looking at this issue is that every judge who ultimately examines an eavesdrop authorization order needs to look at the order in a common sense manner. Here there's a lot of discussion about whether there was or was not corroboration of matters that were in fact available. However, pardon me, the information that was given to Detective Harris by Curtis Washington was that the defendant had already attempted to arrange a hit on his ex-wife, or soon to be ex-wife, and that he wanted to do so again. The information included specifically how he wanted this carried out, and it was very specific. He wanted a person to pose as a delivery man, bring roses, and shoot her in the head twice. It also included a piece of paper with her name and her address. Now, I don't mean to break your tempo here, but some of those facts that he wanted, the flowers delivered, he wanted this, these could not be corroborated unless they occurred, correct? No, but again, what you're looking at, though, is very specific information that was presented to the issuing judge. So is it the specificity of the information or the reliability of the information? I think the two are kind of part and parcel. You also have to think in terms of the nature of the offense that he was talking about and what the police interest would be in preventing the offense in addition to getting information about it rather than something that had already occurred. I think also what we have to look at is the nature of Curtis Washington. Detective Harris was entirely honest with the issuing judge on the nature of Curtis Washington. Curtis Washington has a significant criminal background, and he's in a position where he would like consideration. The flip side of this is if it turns out that Curtis Washington made this up and that John Johnson, in fact, was not interested in having his wife murdered, then that clearly would have been prevented, that he was a liar and that, in fact, he tried to set somebody up. That really would not be mitigating information. So Curtis Washington and the issuing judge are both on notice that this had really better be a true story. Mr. Washington does have, and it was, I think, attached to the application, at least a four, maybe it's a five-page recital of his life at different jailhouses. But it doesn't seem, as counsel has argued, a little incredible that the day or the day, either the day of or the day after they meet, all of a sudden we're discussing with a total stranger a plot to kill someone's ex-wife or soon-to-be ex-wife. I think that it obviously would give one pause because this might not be something you'd even tell your best friend, much less somebody you just met in a pod in the DuPage County Jail. On the other hand, you're looking at somebody who, I believe, and this was not in the application, I believe this came out of the testimony, but in addition to talking about being from the same neighborhood, they apparently claimed, or Curtis Washington claimed, that they had relatives who had gang ties and this type of thing, which may have encouraged the discussion. Also, we're talking about a discussion of something that may well be soon to happen, not something that happened in the past tense. As an issuing judge who's given specific information on something that you want not to occur, I think that in looking at your common sense approach in how these things are issued, I think that's a factor. We're not talking about something that's past tense. We're talking about something that could very well occur. One of the cases that was cited, and actually not in the eavesdropping part, I think it was cited in the third point, but had to do with a situation where there was a person who was solicited who said no, and then another person was solicited who, in fact, carried it out. We know that this is somebody who, based on the information before the issuing judge, was sufficiently interested in carrying it out that he was talking about how it could be financed. He was talking about specifically how it could occur, and he talked at great length about why he wanted it done. I can agree with my learned colleague. I don't think the specificity – there's no such thing as a self-cooperating, as I'm aware of, specificity in detail. As I'm looking at this thing, there's two items that Harris was able to cooperate from Washington. One was that the defendant was, in fact, incarcerated and in charge of solicitation or a violation of an order of protection. And the other was that his ex-wife lived at the Lombard address. But how difficult would it be for somebody to find out what another inmate is incarcerated for? Just walk up to somebody and say, what are you in here for? Is that something that would be particularly difficult to find out? Well, I would guess, because people are all in a pod together, that they all chat about it. Right. So, no, I don't think it's difficult to find out at all. Again, the corroboration aspect wasn't just that Curtis Washington knew what it was, but that Detective Harris, in fact, did go and check both the DuPage County and the Cook County records. You know, that was where the corroboration came in. Clearly, from Curtis Washington telling the story, I'm sure that on a given pod, the inmates all know what everybody's in for, because people in general chat. What about the bond issue? Now, Mr. Johnson says it's $15,000. I owe my attorney a little money. I've got a cousin in, I guess it was a cousin in Cook County who needs some money. Well, as I did the math, it looks like all the money's gone. But did anybody actually, is there any information that the judge had that information available to him when he issued the $15,000 number, when he issued the actual order? Well, neither the application nor the order, I think, indicates that that was verified. And as Your Honor stated, in the age of computers, it probably could have been verified. My recollection is that the order did track the application, and I don't recall anything else being written on it. Okay. So it may simply be that whether the judge had had the information available to him and whether he checked it or not, and simply having checked and signed the order without indicating it, I don't know. I don't think any of the cases talk about a minimum level of corroboration. I do think what they talk about in the same way as they talk about search warrants is that you don't need proof beyond a reasonable doubt. You don't even need a prima facie case. You do need something that is going to, in fact, lead you to believe that an offense has been committed or is about to be committed or is being committed and that evidence connected to this offense will be developed through eavesdropping. And I think under that standard and when being reviewed in a common-sense manner under the totality of the circumstances, I think the issuing judge correctly issued it, and I think that the trial court correctly denied the motion to suppress. In denying the motion to suppress, what he said is that the defendant had not brought enough to undermine the issuing judge. That has not changed. The fact is the issuing judge was given information about a possible solicitation of murder or, depending on the nature of the original conversations, a solicitation of murder that had, in fact, already been committed. But the issuing judge, under the totality of the circumstances, appropriately issued the authorization, and the trial court, having listened to arguments from counsel, determined the counsel had not presented enough to undermine that order. And the cases all say that those orders are entitled to real deference. I think the problem here is that it is understandable that the defendant is concerned about what he views as a lack of corroboration. However, I think that the defendant wants something that is perhaps unrealistic under the circumstances. I personally would be surprised if, and you, having all been in trial courts, would know this better than I, but would it be normal to take somebody out of a pod and take them to a judge? Would his absence not be noted or would it be assumed he was in court or someplace or in the library? I mean, my thought is, at this point, if you start slipping Curtis Washington around, is his absence questioned? And I honestly don't know the answer to that. But my thought is that I don't think it's necessarily an easy thing to take somebody out of a pod to then go and testify in front of a judge. Again, I can be incorrect on that. But it seems to me that, having made a request of Curtis Washington to accomplish something, the defendant might well have been paying attention if he started to behave in a manner that was unusual. What about the propriety of the impeachment with the on-counsel statements? I think that the issue about impeachment, I think defendant's taking it too literally. When you look at, clearly the only thing that the defendant said in his narrative is that he did not have the intent to murder Tracy Hampton. However, when you look at his cross-examination, which goes into a bit more detail, it's through the cross-examination that you see what is some of the impeachment. There's things about, I don't remember such and such. And then you look at this and say, of course he knew what happened, he was part of it. He says that, I always knew Osorio was a cop. Well then, it's like, why did you say these different things to Osorio if you believe that he was a cop? So it's not necessarily impeachment as over and over again saying, I didn't have the intent to kill my wife. It's that when you look at the cross-examination and we look at the state's proffer about what the impeachment was for, it was more about the subtler type things, which is, oh yeah, I don't remember saying that. Or, I don't think I had that conversation there. Maybe it was in there, but I don't remember it being in there. So you're saying we need to consider the whole scope of the context of the cross-examination. Yes, Your Honor. And, you know, again, I'm probably mistaken to even get into the substance of it because this is a situation where you do have multiple defaults. And I think that the people feel that the defaults are necessary to consider even in a direct appeal. And we recognize that there's real concern in direct appeal that a defendant gets his constitutional right to a full appeal. But the defendant never challenged these things below. And so the trial court was never put in a position to rule on them below. I think it's a great difficulty to hold a trial court accountable for something that the trial court was never presented with as argument to evaluate. Let me ask you a question that I asked Ms. Kellnick. If you were to find that the eavesdropping application, the order was improbably granted, would that be subject to a harmless error analysis? I think on the facts of this case, it's very difficult to make a harmless error argument. Because the bulk of the evidence in the case does, in fact, stem from the eavesdropping. There is, I think, a significant amount of evidence in this case. And there's no way to say that it's a close case. However, where significant parts of that stem from the eavesdropping and where the defendant's argument is that anything that came from the original eavesdropping application would be fruit of the poisonous tree. I think it ends up being a somewhat difficult harmless error argument to make. And in fact, you did not raise it in the brief. Correct. Correct. When somebody says in a narrative, as Mr. Johnson is reported to have said, I said some terrible things, some horrible things, but I never wanted to have Ms. Hampton murdered. I mean, I think that was the end of his narrative or close to the end of his narrative. What can the State put on to show, in fact, he did want Ms. Hampton murdered? I think what they did, in fact, put on, which was cross-examination, reference to the nature of his statements. You know, it's very interesting, also, when you read the transcripts or listen, and it's harder, it's more difficult to listen, so I probably relied more heavily on the transcripts. But in the transcripts, you've got Curtis Washington going, oh, really, just give her money, just do this, just do that. And every time he makes a comment that would, you know, theoretically pull the defendant back, the defendant's like, you don't know how serious I am. I mean this. I mean this. That's what you present in cross-examination. That's what you present in your case in chief. It's like one can say one doesn't have the intent, but intent is proven by surrounding circumstances. The surrounding circumstances entirely undermine his statement that I said bad things, but I didn't intend it. And of the uncounseled statements after he invoked right to counsel, what in particular do you believe was presented to counter, you know, I just said some terrible, horrible things. I never wanted to have Ms. Hampton murdered. I think when you look at, and again, the impeachment is less literal than I think the defendant would like. But you have things like I believed I was being set up, and so I knew Osorio was a cop. I never asked for confirmation that she was dead. I think it's things like that, again, that are part of the surrounding circumstances of the offense. So it's like you have a transcript where he's asking for more confirmation when he's saying, you know, I don't think I asked for confirmation. So, again, it's just it's an attempt to undermine his view of the surrounding circumstances. Thank you, Your Honor. Good morning. Thank you. Ms. Skelton. Thank you. The state seems to be suggesting that simply because Curtis Washington told the detective that the defendant wanted his wife killed, that the very serious nature of that somehow establishes reasonable cause for issuance of the warrant. That's very similar to the situation in People v. Wassell where an informant told the police that Mr. Wassell was trying to have his ex-wife, his wife, I guess, not his ex-wife, his wife killed, said he wanted it to look like a burglary, was willing to set up meetings with the informant. But there was no independent corroboration of what this informant was saying the defendant wanted to have done. And this case, Mr. Johnson's case, is a case where there could have easily been corroboration of several of the facts claimed by Mr. Washington. There was certainly more detail in the case that we have before us, though. Wassell was only what you just stated, that, you know, he wanted to have his wife killed, or Lucy Wassell, his wife killed, and so it appeared like it was a burglary. That's all that there was there. Here, we've talked about this morning, additional detail. So it is distinguishable. But the detail that's provided is basically the story that's being provided by Mr. Washington. Oh, we grew up in the same neighborhood, or his brother-in-law is going to get the money. Well, I guess I'm hearing you say that there has to be, in every one of these cases, independent corroboration of each of these facts. Well, no, just corroboration of Mr. Washington's story that the defendant wanted this act done. And the details that he provides could have been corroborated. Here's an individual with very poor credibility. He has a motivation to come up with something. And, in fact, I think the defendant's, a large part of his defensive trial was, this was not my idea. This was Curtis Washington's idea. Where is he going to get the address? Oh, sure. But the fact that he had his ex-wife's address I don't think establishes reasonable cause to believe that meant that Curtis Washington was telling the truth when the defendant said he wanted his wife killed. Just the fact that he knows his ex-wife's address is not sufficient to corroborate that Mr. Johnson really had this conversation and his intent was to have his wife killed. I was following along Justice Enos' trail of thought there. How do you corroborate that two slugs are not two slugs? I mean, it hasn't happened. So what do you think needed to be corroborated here that was not? Let's just do it that way. The nature of the charge against the defendant here. That's a violation of an order of protection, but you want specificity. What did he do? Was he stalking? Was he calling? Did he hit her? I mean, in this case, had they spoken to the defendant's ex-wife, which was something that would have been very readily available to them, they would have determined that there were threats he made to her in the past. That certainly could have been easily corroborated. What else could have been corroborated? They could have brought Curtis Washington before the issuing judge. That's not corroboration. That's testimony under oath. For the totality of the circumstances, you need to find that the information you're being given is reliable. And if the person appears in person and the judge has an opportunity to judge the credibility and demeanor of this individual, that's another way it could have been corroborated. Is there anything else that could have been corroborated? Just checking into whether the statements that Mr. Washington attributed to the defendant about his bond or, in fact, Ms. Burns said there was some information about the defendant and Mr. Washington both having gang ties. That's something that could have, one, been included, and two, probably have been determined through further investigation. There is an interesting, also, aspect in this with respect to Your Honor's question about harmless air. When the defendant spoke to RARA, to Detective Osorio, he said, okay, look, I'm going to talk to my lawyer, I'm going to get some bond money back, I'll call you back, I'll call you back and we'll make the final arrangements. And he never did call back. So I think that, again, demonstrates how significant these audiotapes were to the state's case. So with respect to that, I would say this application by itself is not sufficient and he should be given a new trial without these recordings. Thank you. All right, thank you, counsel, for the arguments. We will take the matter under advisement, render a decision in due course, and we'll stand in a brief recess now.